appreciation for your willingness to serve and as appointed counsel for the appellant under the Criminal Justice Act please support counsel I'm representing the petitioner Michael Williams this is a 2254 I obviously wasn't representing the petitioner at any of the underlying trial or initial state court appeals that he would have had the thing that really strikes me as an attorney that does about 50% of my caseload as criminal defense is the number of conflicts in this particular case that it's just staggering to me to look at it I recognize that a lot of these conflicts are what would be probably construed as less serious potential conflicts but just the sheer number of them is is just mind-boggling to me well counsel how many of them did your client consent to in writing or verbally or both well the only and that's it essentially he's presented with a week before trial a consent to the waiver of the conflict of his attorney and we've got at the time he had Leslie Hall who was engaged to Carlisle Dalyn who was a county attorney that was not prosecuting the case and he also had an attorney Susan Flander she was a public defender that was assigned to his case there was a public defender not assigned to the case Catherine Evans that was married to Susan Blatt a county attorney that was actually working on Mr. Williams's case and withdrew literally on the eve of trial when he's given this this consent to I guess to the conflict it's obviously as it relates to Leslie Holt and Catherine Evans at least that's the the record that we have it's very limited so I guess another way of asking Judge Benton's question I think is are there any of the conflicts you alleged here today that are not consented to and what are those yes I really think that the witness conflicts were the ones that were not consented to most of these witness conflicts were conflicts that the the petitioner could not have been aware of and wasn't aware of until after the record was developed in post conviction relief proceedings the main witness conflict that we've got is going to be Deanna Ackerman moral this is the individual that was potential alibi witness basically this this murder occurred on July 27th 1998 and the police initially respond to a 9-1-1 phone call that was made at 142 a.m. from the son of the victim so we know that the murder must have occurred shortly before that 142 a.m. now Deanna Ackerman had actually according to her initial statements to police said that she had Mr. Williams the petitioner at his home between 1 and 1 30 a.m. to ask him about procuring some marijuana then although she doesn't go over to his house to actually see him or to get the marijuana she claimed at the time when she spoke to the police that she had spoken to him at his home then at 3 30 a.m. on that same early morning of July 27th 1998 Deanna Ackerman actually presents herself to the police station and complains that there's two males in her apartment that wouldn't leave the police actually go to her apartment and remove the Graham brothers we've got Michael and Franklin Graham and of course another conflict situation Michael Graham was actually represented by the public defender's office as well these two Graham brothers were initially suspects in the murder now they were ruled out later and so I don't know that the conflict with the Graham brothers is necessarily rises to the level where it's going to be able to establish an actual conflict well as to Ackerman's testimony the district court said it's contradicted by her other statements that you're well aware of that you alluded to yes the defendants testimony and the defendants wife's testimony and in fact if the public defender Flanders had called Ackerman that would have been ineffective assistance of counsel so that the the the the district court kind of tries to nuke you on that one what do you say well essentially what the district court saying is if if they had called in Ackerman that she would have undercut this the earlier story given to the police by by the defendant and the defendants wife all right well what is the story of the defendant defendants wife their story is is that he was at a bar I think it's Rick's pub at 1130 that his wife testified that she saw him at 1130 and then he's at the bar until he goes home and his wife testified she saw him approximately two and a half hours later around 2 a.m. now if in fact they are lying because they've got a reason to do so if he is initially when talking to the police trying to cover up his marijuana activities he very well may have that may have been the rationale for him to give them false or misleading information by the time he gets to trial it's it's obvious that there's a problem with that story anyway we've got numerous witnesses that that don't don't really corroborate that version of events that he's at this Rick's pub and so going with that Rick's pub theory really wasn't a particularly effective defense and wouldn't have been more effective to present the testimony of Deanna Ackerman who had less of an axe to grind no position that she would have benefited from by arguing that she had actually called him at home during that relevant time frame so yes I mean I agree that Deanna Ackerman calling her potentially as a witness it's a judgment call but given the choices here for this defense attorney these aren't great events given by the defendant that's obviously bogus the defendant's wife's version which unfortunately doesn't actually place him any particular point in time when the murder occurs or you can go at the end Ackerman who at least places him very close to the time of the murder at his home the Deanna Ackerman story would have been the more productive more compelling version to present to the jury Flanders knew about Ackerman statement right at the time of and the you know I think is when you're looking at this particular case it's obviously in hindsight you try to look at it and say well why did they do this why didn't they call some of these different people I can't figure this particular one out other than there must have been they must have chosen not to follow up with some of these potential witnesses due to the conflicts here there really wouldn't have been a whole lot of downside if there had been of an investigation with Deanna Ackerman to see if the earlier story that she gave to the police was accurate or her later version that she told to her friend was the more accurate that she had paged mr. Williams at approximately 2 in the morning one of the things I guess I want to note in this particular case the there's obviously a lot of discussion about legal standard in the in the briefing you know a lot of times on these particular types of conflict issues now we're torn when we're arguing to the district courts is this a Strickland type of standard case or is this this Kyler type of standard and most of the time with the district courts at least where I am in the northern district of Iowa they evaluate under both different types of standards and largely that's because the more recent cases that have particular circuit have declined to determine which standard is going to be used where there's a conflict type of situation that does not arise out of joint representation and so you know when looking at the briefing when when it's put together it's not that we don't have a joint representation issue here do we do not have joint representation issue so wouldn't Strickland be the more appropriate standard I actually well obviously I think the Kyler standard is more appropriate in this case although the representation isn't joint here what we're talking about is public defender's office represents Deanna Ackerman on a drug in a theft case public defender's office represents mr. Williams on a murder case where his potential alibi defense is premised on his drug activity although the public defender's office is not jointly representing parties in the that relate in that representation relates to their role in as potential witnesses it seems to comport more with a Kyler type of situation where you can't make an adequate decision because if you make one decision you're going to harm the other party this isn't just a conflict situation where you know we're talking about if they had represented miss Ackerman on something completely unrelated a shoplifting case only that representation probably isn't potentially going to affect what her testimony is going to relate to on this type of a case because the relating they're representing around a drug case however that's the type of information that's directly covered by attorney client privilege they can't relate what she tells them about that to mr. Williams they're then making decisions or not making decisions based upon the type of prohibition that we're trying to avoid was there in any of the development of the record was there shown that there were decisions not made that that could have been made because of the existence of the potential conflicts here not really at the post-conviction relief hearing they called ms. Hall and they asked her some questions and and you know and miss Flanders in basically the assert attorney-client privilege so they can't say what exactly was told to them by Deanna Ackerman they rule out using Deanna Ackerman because her story would not have matched up with the story of Williams or Williams's wife so not directly mr. Williams offer anything to how he's been harmed by testimony that either came in or could have come in had any of these relationships not existed not really at the post conviction relief hearing he did testify he gave some generalized statements about how he believed that these witnesses would have helped his case but he never goes on the record to state that you know Deanna Ackerman would have placed him you know at a particular point in time here's what the time is where he would have been he's just mostly repeating what's already in the record for purposes of development of these witness statements I'm going to I reserved a little bit of time here so I'm actually gonna try to exercise it oh yes go ahead what's the county seat of Cerro Gordo County Iowa what's the yeah no I I'm from Sioux City Iowa and although I practiced in somewhat rural areas around Sioux City I actually am NOT familiar with Cerro Gordo County I don't know it's around the Mason City area I believe based on the number of conflicts you would assume it's a very rural County thank you mr. Similic hmm may it please the court I'd like to begin with the the arc of Court of Appeals decisions in this case to illustrate how reasonably they applied what ultimately became the law in Mickens even though they decided this case so two years before or even four years before originally but the Iowa Court of Appeals said in the original instance was we don't have a record to we need to remand this case and we specifically remanded for the district court to consider the following issues was there a breach of the relation a breach of duty did the defense counsel do something that was contrary to the interest of his client was that breach related to the relationship that created the conflict and finally did it adversely affect the representation did it change something that counsel would have done and so the case was remanded for that purpose and that's what the district court evaluated the Iowa District Court said it didn't change anything that defense counsel would have done it didn't prevent her from presenting some other viable defense and I say her I mean both of those hers case comes back up on appeal in the interim the Iowa Supreme Court had decided the state versus Watson case which I would submit to this court incorrectly anticipated what the United Supreme Court would say in Mickens what they said in Watson was we do have an automatic reversal rule under the Constitution and that is based upon whether the court had a duty to know or in fact knew of the potential conflict and did not inquire into the relationship then if an actual conflict existed it required automatic reversal but what the United what the Iowa Supreme Court said an actual conflict was was not an adverse effect upon representation it was the nature of the relationship was it dual representation so when this case comes back to the Iowa Court of Appeals they've got to reconcile what their original opinion remanded for and what the Iowa Supreme Court had said and they do both they say on the one hand this isn't the type of relationship that creates the automatic conflict this is more like the Kyler case and we're gonna apply the Kyler rationale to say what we did in the original instance was correct and by the way we didn't violate Watson either so again I think with the Court of Appeals very deftly did was apply Mickens to the facts of this particular case and correctly so so then when the case finally comes back the third time they're asked to they're confronted with the idea that wasn't this an automatic reversal case under both Holloway and under under Watson and the Court of Appeals said no it's not an automatic reversal case because it's not dual representation to which an objection was lodged so I don't think there's any way that this court can say that the Iowa Court of Appeals didn't reasonably apply the precedent from the United States Supreme Court in fact they very deftly stuck to that particular rationale now if there's a difference between Holloway cases and Mickens cases I would submit to this court it's in the nature of structural error I mean what what Strickland and Cronic talk about and what Holloway talks about is really the functional equivalent of not having counsel at all and those cases require automatic reversal the cases like this case and Mickens are cases where you're not denying counsel to this but there might be something that affects counsel's choices in a particular case and we're going to look to those particular facts to decide whether reversal is warranted so what this court what the Iowa court did here was exactly right because when you look at the facts of this case and how to apply the facts there isn't any credible evidence that defense counsel would have approached the case differently had there not been these other types of about Deanna Ackerman the interesting thing that takes place here is post-conviction counsel wants to prove that a conflict exists and an actual conflict exists by only calling the defense attorney to exert the privilege so defense counsel doesn't actually ask answer any questions about what that relationship entailed what she learned from that relationship and whether it changed anything in the way that she would represent in fact her blanket assertion is it didn't change what I would do but I'm not going to tell you about the nature of the relationship between that witness and myself is it very clear and undisputed that at the time of the actual case the very first case that that counsel knew of Ackerman and knew of Ackerman's first statement to the police it's certainly undisputed that early in her representation of Williams she knew of Ackerman and had discussed things with Ackerman what she discussed we don't know and she well how do we know that she knew about the first statement to the police well I think everyone's assuming here all the courts are assuming that everybody knew that at all relevant times what's the basis for that well I think I think my recollection of the record is is that her representation of Ackerman began about the same time there were the representation of Williams began and the discovery had begun on the case but I don't absolutely know I think that probably does I don't remember her testimony being specific enough to say what the timing was when that particular information came forward but but in any event I would suggest that what needed to be done here to prove the actual conflict and that is a conflict that affected the representation was to call Deanna Ackerman as a witness Deanna have a privileged conversation to which she couldn't testify she could choose to testify to what it was she apparently had been willing to tell the police earlier and it's important to remember this is not a failure to investigate claim that's being made the assumption is all she had to offer under this particular record is this kind of equivocal statement about when she talked to Williams on the phone so to prove actual conflict in this particular case it was absolutely necessary to call Ackerman find out what it was she knew how it related to the to the defense and whether we could then presume or let's say make a credibility determination as to whether we believed counsel's testimony as it is there's only one credible witness to evaluate and I would say implicitly the district court accepted in the Iowa Court of Appeals accepted the testimony of the attorney who said I would not have changed the approach I took to this particular case and beyond the the discrepancy between Ackerman statement and the defendants own statements in his wife statements is the fact that it's not really a defense that I called him at one o'clock is not a defense to a murder that occurred at 142 but I called him at 205 is not a defense to a murder that occurred at 142 so really Deanna Ackerman doesn't offer anything but the most vaguest of defenses and alibis for this particular defendant and what counsel said was weighed against what my client had said what his wife was going to testify to it just wasn't worth calling this particular witness the other witnesses of course she rejected because of the hearsay nature of their testimony and the fact that they wouldn't be able to offer anything because their statements were about somebody else making statements and as to that fact again we don't have a lack of investigation argument being made here we don't know that we could have uncovered the witness that was in that was in jail talking about the events that was overheard I mean maybe if we had a lack of investigation claim made and this witness had been called to offer what had actually been said again we'd have something to weigh the credibility of that witness against counsel's assertion that it did not make a difference to what she chose to do so I would submit to this court that there's neither an unreasonable application of the law to this case essentially what the Iowa Court of Appeals did was apply Mickens in the way the United States Supreme Court said and there's no unreasonable application of the facts to this particular instance because again we're talking about judgment calls here it's an it's not enough to say that some attorney would have made a different judgment or there maybe was a better defense that could have been offered the question here is was it unreasonable for the route chosen because of her relationship with another client and I think that's what's severely lacking in this particular record there is nothing to show that another route would have been chosen had this relationship or these other relationships not existed I guess I would conclude in saying that I think what Mickens does is make the system work in small-town rural Iowa counties we have a small population of attorneys and we have even smaller population of criminals and they all come from the same kind of pools you know they they're the usual suspects these public defenders know who all these witnesses are going to be they've represented all these witnesses so there's going to be these inherent conflicts that exist these potential conflicts but what Mickens does is allow us to evaluate those cases on a case-by- case basis so it's not because they previously represented a particular individual who's going to be a witness it's not because they previously had a prior representation of a particular witness or even a concurrent representation it's how did these representations and these relationships affect what was done and that you determine on the facts and in this case you cannot determine that a different choice was made so there's no actual conflict and we would ask that you affirm the Iowa Court of Appeals decision thank you counsel mr. Perry thank you I don't have much to add to my earlier arguments I mean you know counsel is correct Mickens is requires that there be a determination of some and all I can say about that here is when you've got a decision that is being made whether or not you're going to call a particular alibi witness or not at least partially based upon I guess not really dual representation but simultaneous representation of that alibi witness in a related matter to what their testimony would be as the alibi witness that is the adverse effect they can't fairly evaluate whether or not they should call DNA Ackerman or not called DNA Ackerman because to call DNA Ackerman is to necessarily incriminate DNA Ackerman for marijuana sales if they can't even fairly determine whether or not that's an appropriate venue or not venue an appropriate Avenue for them to explore they basically have reached that that result that Mickens says is is unreasonable which is there's an adverse impact upon the representation but in order for for us to get that wouldn't we need to know what Ackerman was going to say I think all we need to know is what Ackerman's statements were to the police and assume that she would testify to the same alibi story that she gave to the police earlier I think if we've got Ackerman there at a trial you've got then somebody that places the defendant at home between 1 and 130 when the 911 come call comes in at 142 in the morning it's right around that crucial time frame it's certainly possible that the defendant was at home at 1 a.m. went out and committed the murder and the 911 call comes in at 142 a.m. but it's not very likely and she's going to be a far more effective alibi witness than any type of alibi story that the defendant comes up with about sitting at a bar without giving any names or other people that can identify where he's at from 1130 all the way until 2 o'clock and so that type of I guess decision-making where a decision it's being impacted by the simultaneous representation that's exactly the type of thing that we're trying to avoid and that's what Mickens essentially bars us from allowing that type of representation where it's having an adverse impact the public defender's office should have withdrawn when they obviously labeled her as probably the most useful alibi witness that they had their only other way to go is what they did calling Williams wife to say that she saw him at 1130 at a bar and then he was at home around 2 o'clock I want to thank you very much for listening to the arguments today and I appreciate your time thank you thank you counsel court wishes to thank both of you for your presence in argument this morning and the briefing which you've submitted in this case consider the case submitted will render decision in due course